[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a civil action returnable to the Judicial District of New Haven for dissolution of marriage and for other relief.
This action has been consolidated with a conversion and embezzlement action between this named plaintiff, as well as her two children, and the named defendant, returnable to the Judicial District of New Haven, Docket No. CV-89-289076.
Many of the underlying facts in this case are not in dispute. The plaintiff, whose maiden name was Pamela Busick, and the defendant were married at Marion, Ohio, on August 19, 1967. Both the plaintiff and the defendant have, for at least twelve months immediately preceding the date of decree of dissolution, been residents of the state of Connecticut. The marriage between the parties has broken down irretrievable with no reasonable prospects of reconciliation. There is one minor child issue of the marriage, Rebecca Anne Price, born October 20, 1975. No other minor children have been born to the plaintiff wife since the date of marriage of the parties and neither party is receiving State assistance. Commencing July 1988 the parties occupied separate bedrooms in the family home. The defendant vacated the family home in October of 1989. The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented the court finds that the primary cause of the breakdown of the marriage was the defendant's misappropriation of funds of the plaintiff as well as funds of the two children of the parties. The defendant misappropriated $38,014.91 of the plaintiff's stocks, plus an additional $42,514.50 from her bank account. He also misappropriated $9,554.49 of stocks that were for the benefit of his daughter Jennifer Price and $14,930.54 of stocks that were for the benefit CT Page 4582 of his daughter Rebecca Price.
In addition to the defendant's misappropriation of funds, other causes of the breakdown of the marriage are as follows: 1) Lack of communication between the parties, and 2) the defendant being overly critical of the plaintiff.
When the parties married, the defendant was an officer of the United States Navy and had already completed 3-1/2 years of service. He continued in the service until he had completed 20 years and is now entitled to a pension commencing with age 60 plus one day.
The plaintiff had a Bachelor degree in art history as of the date of marriage of the parties plus 45 additional credits. The defendant had a degree in mechanical engineering as of the date of marriage of the parties. The defendant is 51 years old. His health is reasonably good. His Masters Degree is in management science. He continued his education after the marriage and now has a degree in Management Science. After the defendant was discharged from the Navy the parties moved to New York where the defendant obtained employment. From there they moved to Massachusetts as the defendant had found a better job. When the Massachusetts job ended, the defendant contested his firing and it was treated as a layoff with the defendant collecting unemployment compensation. The defendant was thereafter unemployed for approximately one year, after which he became involved with acoustical partitions with three other people. During the one year layoff period, the defendant worked on a color project that he hoped to sell to Polaroid, but nothing came of it. He invested approximately $40,000.00 into acoustical partitions and was bought out by his partners for $40,000.00. In 1978 the plaintiff and defendant moved to Rhode Island, once again because the defendant had found better employment. The defendant's employment in Rhode Island was as a project engineer. He quit his Rhode Island employment in 1981 to obtain better employment in Guilford, Connecticut. He was employed in Guilford, Connecticut, from 1981 to 1985 when his employer went into a Chapter 11 bankruptcy. He was unemployed between 1985 and 1989 when he was working at Alamap building and designing a machine to coat paper. He obtained employment in June of 1989 as a project engineer for Connecticut Hard Rubber. He remained in that employment for approximately 15 months. After the 15-month period he was fired, having been told that his marriage problems were affecting his work. He appealed the firing and was able to CT Page 4583 obtain unemployment compensation in August of 1990. The unemployment compensation continued until March of 1991. He did not draw any salary from Alamap between 1985 and 1989 except for the calendar year 1987 when he withdrew $2,000.00 in salary. Between September of 1988 and April of 1989, he was employed by Pepperidge Farms, working a 40-hour week and was also employed part time by Hertz Rent-A-Car, working eight hours a day on Saturdays and Sundays. Since leaving his employment with Connecticut Hard Rubber, he has made efforts to obtain employment. As of January 10, 1992, the defendant was employed driving a school bus, earning $7.75 an hour and working an average of 25-30 hours per week. The total wages of the parties in the calendar year 1987 amounted to $9,862.00, of which the defendant received $2,000.00 from Alamap, and the balance was earnings by the plaintiff primarily from her teaching jobs. The total wages of the parties in the calendar year 1988 amounted to $32,608.00. That amount was earned as follows:
PERSON SOURCE AMOUNT
 Defendant Pepperidge Farms Mail Order Co. $ 5,877.00 Defendant Hertz Transportation 1,046.00 Defendant H. M. Payson Co. 14,331.00 Plaintiff The Kitchen Place 2,296.00 Plaintiff Guilford Board of Education 8,332.00 Plaintiff Educational Testing Service 180.00 Plaintiff Project Learn 1066 546.00
Part of the Payson distribution to the defendant came from plaintiff's funds that the defendant wrongfully used in establishing that Payson IRA account for himself. The defendant does not know how that money was spent after he received it from Payson, although he believes that some of it was probably used by him to live on and some of it may have been used for Alamap equipment.
The defendant filed an individual income tax return for the calendar year 1989 showing total wages of $35,497.00, consisting of the following:
SOURCE AMOUNT
 Pepperidge Farms Mail Order Co. $ 5,348.16 Hertz Transportation 4,763.10 Florocarbon-CHR Industries 23,125.81 CT Page 4584
Between 1985 and 1989 when the defendant was unemployed, the plaintiff was the sole source of family income, primarily as a substitute teacher, as well as doing tutoring work and working in a restaurant. The plaintiff is 51 years old. Her health problems include being under an emotional strain for which she takes medication, suffering from being tense, and having a heart condition. She worked as a substitute teacher between 1985 and 1987 and as a teacher's aide since 1987 to the present time. She worked until two months before the oldest child Jennifer was born. Jennifer was born in August 1970. Her salary went into joint savings and the parties lived on the defendant's salary. At the time of marriage, the plaintiff had approximately $1,000.00 to 2,000.00. They were able to save between $7,000.00 and $8,500.00 during the first three years of their marriage that was used on a deposit for the first home they purchased in Binghamton, New York. The parties remained in Binghamton, New York, for approximately six years after which they moved to Massachusetts. It was while in Binghamton, New York, that the defendant obtained his Masters Degree. The plaintiff was employed for approximately three years in Binghamton, New York. The parties made approximately $6,000.00 when they sold their Binghamton, New York, home and moved to Massachusetts. The plaintiff has been employed in four different school systems between 1985 and 1989. She presently is an instructional aide at the Guilford High School for the learning disabled. In addition, she works part time after school one to two days a week at a local restaurant. She would be able to earn between $20,000.00 and $33,000.00 if she were able to obtain a Connecticut certificate to teach and obtain employment as a full time teacher. She is presently not qualified to teach art. She would need to pass two examinations to yet a temporary certificate.
In approximately 1976, the plaintiff received from the estate of her mother approximately $250,000.00 in stocks and bonds. When the parties moved from Massachusetts to Rhode Island, they purchased a home in Rhode Island. The Rhode Island home was purchased for approximately $94,000.00. There was a $40,000.00 first mortgage and the balance of $54,000.00 was from the plaintiff's inherited funds. The plaintiff used approximately $50,000.00 from her inherited funds towards that purchase. The parties netted $71,607.54 from the sale of the Rhode Island property. The use of that sum has not been proven by either party. The defendant claims that he contributed 6% to 7% of the cost of the Rhode Island property and the plaintiff contributed CT Page 4585 the balance. During the approximate five years that the parties resided in Rhode Island, the plaintiff was employed part time for approximately two years. When the Rhode Island home was sold, the plaintiff used approximately $29,000.00 from her inherited funds to pay of the balance of the existing first mortgage. The Madison home that the parties presently own jointly was purchased in 1982. The purchase price of that home was $155,000.00. The defendant provided the initial $1,000.00 down payment for the purchase of the Madison home from his own funds. There was a $50,000.00 first mortgage and a $50,000.00 bridge loan used towards the purchase of the Madison property. The balance of approximately $54,000.00 plus closing costs was from the plaintiff's inheritance funds. The $50,000.00 bridge loan was paid off approximately six months after the Madison home was purchased from the net proceeds of the sale of the Rhode Island property. After the bridge loan was paid off, that left a remaining net from the Rhode Island sale of $71,607.54. Almost all of the money that was used for the purchase of the Rhode Island property came from the plaintiff's inheritance funds. Neither party has satisfactorily established what uses were made of the $71,607.54.
In 1986 the defendant formed the Alamap Corporation. The corporation was funded from part of a $75,000.00 equity mortgage on the family home in Madison, Connecticut. The defendant's mother advanced to the defendant approximately $39,600.00 to be used for Alamap and family expenses. Both parties agreed to obtain that equity line of financing. The defendant owned 60% of the shares of stock in Alamap and the defendant owned 40% of the shares. The $75,000.00 equity line of credit was used partially on behalf of Alamap as follows:
DATE EQUITY LINE AMOUNT TO WHOM ISSUED
 3-21-86 $ 49,000.00 Alamap Corp. 3-27-86 2,167.84 RAE Bearing Sonic 4-2-86 1,888.00 Global Equipment Co. 4-2-86 4,000.00 Albert Instrument Co. April 1986 1,333.15 Sillifer Holden 6-4-86 1,000.00 Alamap Corp. 7-1-86 3,000.00 Alamap Corp. 7-7-86 2,900.00 Alamap Corp. 7-16-86 1,000.00 Alamap Corp. 8-4-86 600.00 Alamap Corp. ----------- $ 66,888.99 CT Page 4586
The balance of the $75,000.00 was either used for family expenses, or its use has not been established.
Between March 21, 1986 and December 29, 1987, a total of $147,749.43 was deposited into the Alamap bank account.
That equity line of credit is interest payment only. It matures in 2001. The principal balance remains at $75,000.00. The Madison home has a present fair market value of $200,000.00, with a first mortgage balance of approximately $44,000.00, and the equity line of credit balance of $75,000.00, for a net equity in the family home of $81,000.00.
Alamap presently has no assets. Its assets were sold to American Blue Print in Texas in May 1991 for $25,000.00. The defendant retained $2,000.00 from the $25,000.00 for his own personal expenses. Approximately $5,000.00 of the $25,000.00 was spent on corporate debts.
Of the approximate balance of $18,120.00 that was turned over by the defendant to his attorney, there remains being held in escrow by his attorney the sum of $9,920.00. By agreement of the parties $8,200.00 of the $18,120.00 was paid over to the plaintiff for arrearages owed by the defendant. If the $25,000.00 were still in existence, this court would have divided it 60% to the defendant ($15,000.00) and 40% to the plaintiff ($10,000.00).
In order to close out Alamap, approximately $1,000.00 is needed for accountant fees and $250.00 for filing fees.
Approximately $10,000.00 has been paid from Alamap funds to an attorney in Massachusetts for legal patent fees. The defendant claims that that patent is a joint venture with another person and is not an Alamap asset. A patent has been awarded. The plaintiff claims that no one is interested in the patent.
The most recent financial affidavit filed by the plaintiff shows gross weekly earnings of $207.16 from her principal employment and net earnings of $190.06. It also shows income from The Kitchen Place of $48.00, less $3.60 FICA, and further shows weekly bank interest of $59.00 and stock dividends of $70.00, for a total net weekly income of $363.46. The one CT Page 4587 liability shown is to Dr. Zanker with a balance due of $100.00.
The current monthly mortgage payment on the first mortgage is $661.00 and the current monthly payment on the second mortgage is $590.00. The plaintiff owns a 1984 Nissan with a value of $1500.00 and no loan balance. She has $152.00 in her checking account. The most recent financial affidavit of the defendant, file-stamped June 4, 1992, shows the following liabilities:
CREDITOR BALANCE DUE
 Master Card $ 4,500.00 Virgina Price 39,600.00 New Haven Savings Bank 23,500.00 First Constitution 37,500.00
The defendant shows $192.55 in his checking account and a Navy retirement that is collectable at age 60.
The parties are in dispute regarding various items of personal property. The Plaintiff's Exhibit 3 is an itemized list of items that were given to the plaintiff by her family. All of those items are at the Madison home. Defendant's Exhibit 3 is a list of items that the defendant is seeking. The defendant is in agreement that the plaintiff can retain the following items listed on Defendant's Exhibit 3:
(1) Master Bedroom Suite
 (8) All genealogy and family pictures exclusive of immediate family including frames, enlargements, colored photographs, etc. (The defendant agrees that the plaintiff can retain three pictures of her mother, grandmother, and grandfather only.)
 (12) Christmas Decorations: b. Felt wall decorations of Christmas tree with snapon
 (22) Oriental Rugs a. Kerman-Royal Palace White and Floral Design 10' X 14" e. Nian 6' 11" X 4' 8" Geometric pattern
The defendant claims that the remaining three rugs shown on Defendant's Exhibit 3, paragraph 22, were purchased by him while CT Page 4588 the parties lived in Rhode Island. It is the claim of the defendant that the value of all five oriental rugs is approximately $9,000.00.
The following items from the Defendant's Exhibit 3 are not at the family residence:
 (9) All slides taken by John Price including projector, screen, slide trays and related items.
 (16) Silver child's knife, fork, and spoon Towle pattern with initials JTP, cake cutter with initials TAP
The parties are in dispute regarding the Oriental rugs shown on Defendant's Exhibit 3 as Item 22)b. Kahsan Red; Item 22)c. Qum, Blue Forest Scene Hunting, Figures, Birds Animals; and Item 22)d. Qum Brown and Earth tones. The parties are also in dispute regarding the piano at the family home shown on Defendant's Exhibit 3 as item 13. The defendant claims that he paid for the piano in 1977 or 1978 while the parties resided in Rhode Island and that it was purchased for Jennifer. The court finds that the defendant has failed to prove that claim.
The plaintiff claims the she loaned Alamap $2,230.00 and now seeks to have the defendant responsible for paying that debt. The court finds that the plaintiff has failed to prove that the defendant is liable for that claimed debt.
On September 9, 1991, the following orders were entered by agreement of the parties:
AGREEMENT
The parties agree as follows:
 1. The court may find the child support arrears to be $7,849.29 and mortgage arrears to be $3,067.49 or a combined arrearage of $10,916.78.
 2. Husband agrees to forthwith pay the sum of $7,200.00 towards said arrearage.
 3. The weekly child support order of $165.00 is reduced to $100.00 per week. CT Page 4589
 4. Husband agrees to pay $1,000.00 as advance payment against owed support and second mortgage due over the next (4) four weeks.
 5. Wife has exclusive possession of premises for the next four (4) weeks.
 6. In the event this matter is not resolved by trial or agreement within the next four (4) weeks, responsibility for the payment of the second mortgage thereafter will be decided by the court at the final hearing in this matter.
The parties are in dispute regarding who should be responsible for the second mortgage equity line payments following the September 9, 1991 pendente lite order as referred to in Paragraph 6 of such order. As a result of that dispute, the parties are unable to agree as to what the existing pendente lite arrearages owed by the defendant to the plaintiff amount to as of the date of trial. The parties agreed during the course of the trial that the issue of those arrearages would be reserved to a date following the rendering of this decision when the question of who was responsible for the equity line of credit payments has been resolved. The court orders that the monthly interest equity line of credit payments be the responsibility of the plaintiff.
The $7,200.00 order has since been paid, referred to in paragraph 2 above, as well as the $1,000.00 order, referred to in paragraph 4 above. Therefore, the arrearage as of September 9, 1991 is $2,916.78. Whether that amount has increased or decreased will be resolved at a post-judgment hearing on the issue of arrearage.
On June 6, 1990, a pendente lite order was entered that in part required the defendant to pay a medical bill for a portion of amounts not covered by insurance regarding Jennifer Price. From the evidence presented, the court finds that the bill in question was incurred after Jennifer Price reached age 18 and therefore the court is not ordering the defendant to pay that bill in the amount of $600.00. Jennifer turned 18 in August of 1988 and the bill in question was incurred between March and May of 1989.
An IRS refund check in the amount of $576.00 was received on CT Page 4590 or about February 1, 1991, and is being held in escrow by counsel for the plaintiff.
This court has considered and weighed the factors set forth in Conn. General Statutes 46b-81(c) in determining the issue of assignment of property and has considered and weighed the factors set forth in 46b-82 in determining alimony. This court has also considered and weighed the factors set forth in 46b-62 in determining whether to grant attorney's fees. Further, this court has considered and weighed the factors set forth in the Support Guidelines as well as all applicable statutes in determining the issue of support. This court has also considered 46b-56 in determining the issues of visitation and what it is in the best interest of the minor child.
ORDER
The court hereby enters the following orders:
(A) Dissolution
The marriage of the parties to this action is hereby dissolved on the grounds of irretrievable breakdown and each of the parties are hereby declared to be single and unmarried.
(B) Alimony
1) The court awards as periodic alimony to the plaintiff the sum of $1.00 per year.
2) The court orders by way of lump sum alimony that the defendant pay to the plaintiff 60% of the $66,888.99 used for Alamap from the equity line of credit, which 60% amounts to $40,133.39. The payment of the $40,133.39 is to be made in March 2001 when the principal of the equity line of credit is due and payable, or when the plaintiff pays in full the equity line of credit, whichever date first occurs. Said payment by the defendant to the plaintiff is to be without interest.
It is the intention of this order that the periodic alimony order and the lump sum alimony order be non-dischargeable in bankruptcy under the provisions of 11 U.S.C. § 523(a)(1) through (10).
(C) By Way of Property Settlement CT Page 4591
1) In accordance with the provisions of 46b-81(a), all of the right, title and interest of the defendant in the family home located at 17 High Field Lane, Madison, Connecticut, is assigned to the plaintiff. The plaintiff is to pay the first mortgage and all real estate taxes and insurance on said property and hold the defendant harmless therefrom. Further, the plaintiff is to make the interest payments on the equity line of credit until the maturity date of that equity line of credit, or its earlier discharge, whichever occurs first.
2) The parties are in dispute regarding the items of personal property. The court awards to the defendant the following items of personal property, as shown on Defendant's Exhibit 3: Items 2, 3, 4, 5, 6, 7, 8 (other than for the three family pictures), 10, 11, 14, 15, 16, 17, 20 and item 22(d) Qum Brown and Earth Tones 7' 8" X 4' 8". All other items of household furniture and personalty at the family residence, including furniture, paintings and prints, are awarded to the plaintiff. Any other items of personalty that are in the defendant's possession are awarded to the defendant.
3) The defendant is to hold the plaintiff harmless of any claims of his mother arising out of the approximate $39,600.00 advanced by her to him.
4) Each party is ordered to endorse the IRS refund check in the amount of $576.00 being held by counsel for the plaintiff. After that check has been deposited by him into his client's fund account and has cleared, he is then to divide that check equally between the parties.
5) The plaintiff is to pay the liability shown on her financial affidavit and hold the defendant harmless therefrom.
6) The defendant is to pay the liabilities shown on his financial affidavit, including the liability to his mother, Virginia Price, in the amount of $39,600.00 and hold the plaintiff harmless therefrom.
7) The 1984 Nissan shown on the plaintiff's financial affidavit is awarded to the plaintiff.
8) The CBT checking account, with a $252.00 balance, shown on the defendant's financial affidavit, is awarded to the CT Page 4592 defendant.
9) The insurance policies shown on the defendant's financial affidavit are awarded to the defendant.
10) The 1981 Chevrolet shown on the plaintiff's financial affidavit is awarded to the plaintiff.
11) The "other personal property" shown on the plaintiff's financial affidavit is awarded to the plaintiff.
12) All bank accounts, stocks, bonds and mutual funds shown on the plaintiff's financial affidavit are awarded to the plaintiff.
13) The Town of Guilford retirement and pension plan shown on the plaintiff's financial affidavit is awarded to the plaintiff. That retirement plan is presently not vested. In the event the plaintiff continues her employment at the Guilford system until October 1997, she will be paid $195.64 monthly. The plaintiff intends to remain employed in the Guilford school system.
14) The plaintiff also owns approximately 200 prints that are being held by another person in Rhode Island, and are jointly owned between the plaintiff and that other person. The plaintiff does not know the present value of the prints. The plaintiff paid $10,000.00 towards the total purchase price of those prints. The court orders that all of the plaintiff's interest in the 200 prints being held in Rhode Island are assigned solely to the plaintiff.
15) The court assigns to the plaintiff 40% of the gross proceeds received from the patent that has been awarded, previously referred to in this decision. The 40% is intended to be 40% of the total sums received arising out of the patent, not simply 40% of what the defendant may receive. Therefore, if the defendant has, in fact, transferred a 50% interest in that patent to a third party, then the defendant will have remaining a 10% interest in the patent and the plaintiff will have a 40% interest in the patent and the third party will have a 50% interest in the patent. The defendant is to execute whatever documents are necessary to effectuate this assignment. The court retains jurisdiction over any dispute regarding documents required to be signed to effectuate this assignment. CT Page 4593
16) The court orders that the $9,920.00 held in escrow from the sale of the Alamap assets be divided as follows: (a) up to $1,000.00 may be used for accountant fees, (b) up to $250.00 may be used for filing fees, (c) the balance is to be paid over to the plaintiff. In the event there is any surplus from the accountant fee and/or the filing fees, then that surplus is to be divided 40% to the plaintiff and 60% to the defendant. In the event of any deficiency, then the defendant is to pay such deficiency regarding accountant fees and/or filing fees.
17) The court hereby assigns to the plaintiff 40% of the defendant's Navy pension. The 40% is intended to be 40% of the total amount of the pension received as of the date the defendant commences to receive the pension. The defendant is to execute whatever documents are necessary to effectuate this order. The court retains jurisdiction over any disputes regarding documents required to be signed to effectuate this assignment.
(D) Attorney's Fees
Each party is responsible for the payment of their own attorney's fees.
(E) By Way of Custody, Support and Visitation
1) Sole custody of the minor child is awarded to the plaintiff.
2) The defendant is awarded reasonable rights of visitation. This order of reasonable rights of visitation is subject to modification upon the filing by Family Relations of its Case Study Report in accordance with Section 479 of the Practice Act. Said visitation is not to be exercised at the family residence.
3) In accordance with the Support Guidelines, the defendant is ordered to pay to the plaintiff as support, the sum of $45.00 per week. An immediate wage execution is authorized. The court has based that amount on an average of 27-1/2 hours per week that the defendant is working at $7.75 per hour, and has arrived at a net weekly income for guideline purposes, after deduction for taxes, of $180.00 per week.
4) The plaintiff is to provide health insurance for the CT Page 4594 benefit of the minor child as is available through her place of employment. The parties are to divide equally any uncovered or unreimbursed medical expenses. The provisions of 46b-84c are applicable.
(F) Miscellaneous Orders
1) Each party is ordered to provide to the other party a copy of their respective federal and state income tax returns within 30 days after such returns have been filed, by certified mail, return receipt, or registered mail, return receipt. This order shall remain in effect for so long as there is an outstanding support order and/or alimony order in effect.
2) The issue of pendente lite arrearages is reserved for post-judgment hearing.
Sidney Axelrod, Judge